JACOB BLOUNT, plaintiff in error, *vs.* JAMES M. COSTEN *et al.*, defendants in error.

(MONTGOMERY, Judge, was providentially prevented from presiding in this case.)

Where a bill was filed to engraft upon an absolute deed a secret trust, and the defendant set up that the original transaction was a scheme to defraud the creditors of the true owner of the land, and the Court, on being requested to charge the jury that if the intent of the parties was

to defraud the creditors, as claimed, the Court would not interfere be-tween parties engaged in an illegal act, charged the law as requested but added, that it must appear that some particular creditors were in-tended to be defrauded, and that some particular creditors were in fact defrauded:

*Held*, That this qualification was error, and the Judge should have charged as asked, without qualification.

Debtor and creditor. Fraud. Before Judge STROZIER. Decatur Superior Court. October Adjourned Term, 1871.

James M. Costen, in right of his wife, Elizabeth A. Cos-ten, and Mahala H. Wilder, as the next friend of James G. Blount, a minor, filed their bill against Jacob Blount, con-taining, substantially, the following allegations:

That on April 5th, 1864, the said Elizabeth A. and James G. Blount, now deceased, were married, and on July 23d, 1865, had born to them the aforesaid minor; that the said James G. Blount was seized and possessed of a house and lot in the city of Bainbridge, of the value of $1,500 00; that on the ... day of ......, said house and lot were levied on, under an execution against the said James G. Blount, and afterwards sold; that said Blount procured a friend, Allen J. Swicord, to bid off said property for him for the sum of $250 00; that said Swicord held said property for the said James G. Blount until informed by the said James G. that he had given to the defendant the money with which to purchase said land for him; that the said James G. had given the money to the de-fendant with which to purchase said house and lot, under the distinct understanding that the defendant would buy said property for the said James G., or his use; that complainants are informed and believe that the defendant refunded the $250 00 to the said Swicord and took a transfer of the deed made to said Swicord to himself, instead of to the said James G. Blount; that the said James G. died on April 1st, 1865, leaving the said Elizabeth A. and the said James G., minor, his only heirs-at-law; that the said James G. Blount, deceased, used said house and lot as his property, and died seized and possessed; that the said defendant, on the ... day of June,

1865, by pretending that he had paid the purchase money for the transfer of the deed to said property to himself, and by fraud and circumvention, obtained the possession of said house and lot, and has ever since refused to deliver possession to complainants, or to account to them, in any manner, for the same; that since the defendant has been in possession, he has received the sum of $750 00 as the rents and profits of said property. Complainants waive discovery. Prayer, that said defendant be decreed to convey said property to complainants, and to account to them for the rents and profits; that if said defendant has sold said property to an innocent purchaser, that he may be required to account to complainants for the rents, issues and profits of the same up to the time of such sale, and that damages, by way of compensation, may be awarded for the *corpus* of said property so sold.

The defendant, in his answer, admits that the house and lot was sold under execution, as charged, and bid off by Allen J. Swicord, but denies that it was purchased for the said James G. Blount; that if there was any secret arrangement or understanding between Blount and Swicord, the same was unknown to defendant; denies, positively, that the said James G. and his family, by defendant's permission, did live and reside upon said land to the time of his death; denies that the said James G. claimed said property as his own, and that he died seized and possessed of the same; denies all fraud and circumvention; admits that since defendant purchased said property from Swicord, he has exercised ownership over the same, and has received rents. and profits amounting to $200 00. The answer further alleges that, before the filing of complainants' bill, defendant sold and conveyed said property, for a valuable consideration, to one William R. Mims; also, that before the filing of the bill, the matters in dispute had been referred to arbitration and settled by an award in favor of defendant.

The only evidence material to an understanding of the case was to the effect that the reason why James G. Blount desired Swicord to bid off the house and lot for him, was because he could not hold the land in his own name, as there were out-

Blount *vs.* Costen.

standing executions against him, and Swicord agreed to hold said property, in order to protect it from said debts, which facts were communicated to the defendant at the time of the transfer of the deed.

The jury returned a verdict for the complainants for the sum of $775 00; whereupon, the defendant moved for a new trial, because the Court erred in making the qualification contained within ( ) to the following request to charge: "That if Allen Swicord entered into an agreement with James Blount, that Swicord should bid off the property at sheriff's sale and hold it for him, James Blount, under a promise and agreement, for the purpose of delaying or hindering his creditors, and Swicord purchased it for that purpose, and Jacob Blount, with a full knowledge of all the facts, and at the request of James Blount, took the title from Swicord for the same purpose of hindering and delaying creditors, and these facts appear from the proof made by complainants, then James Blount, if in life, could not recover, nor can his heirs-at-law recover," (" provided, Jacob Blount has alleged some particular creditor or creditors who were intended to be defrauded, and who were defrauded, and, provided further, that the said Jacob Blount has shown clearly that these particular creditor or creditors were defrauded.")

The motion for a new trial was overruled and defendant excepted, and now assigns said ruling as error.

FLEMMING & RUTHERFORD, for plaintiff in error.

D. McGILL, represented by B. B. BOWER, for defendants.

McCAY, Judge.

We think there was error in the charge of the Court, and there being a good deal of evidence on both sides, that the error is of such a character as it is very probable it may have had much influence on the verdict. We know of no authority for the distinction drawn by the Judge. It is sufficient to make the act illegal if the proof show the intent was to de-

fraud creditors. Nor is it necessary that any particular creditor should be mentioned by name; nor does the law require that the fraud shall have been successful. The point of the refusal of the Court to interfere, is the intent of both parties to commit a fraud. If in such an undertaking the parties leave the matter in such a condition as that one or the other must appeal to the Courts to get his interest in the corrupt bargain, the Courts will not heed him. True, it must appear there were creditors; that is necessary to make the intent possible, or that it was expected there would be creditors.

In either case, if the intent was to defraud them, the Court would not aid either party to get the fruits of the villany. But it is wholly immaterial who the creditors were, and who it was expected they would be. They are not parties to the present contest, and their rights are not now on trial.

Were these parties at the making of the deed engaged in an illegal act? Were they scheming to defraud the creditors or expected creditors of the maker of the deed? If so, they come within the rule. The Courts will aid neither of them. The names of the creditors and the success of the fraud are facts it may be well to use in coming to the conclusion as to the intent, but if that is made clear the detail of the debts and the success of the fraud are not material.

Judgment reversed.